## JOHN GREEN *v.* DEMPSEY BROWN.

A note for money dated May 9th 1863, is liable to the operation of the *scale law*, notwithstanding that it is payable in " good bankable currency."

(*Laws* v. *Rycroft, ante* 100, approved.)

COVENANT, upon a note given as the price of a horse, tried before *Cloud, J.,* at Spring Term 1870, of DAVIDSON Court.

The note was a plain one, for " four hundred dollars in good bankable currency," payable at twelve months, with interest from date, and was dated May 9th 1863.

The main question below was, whether it was liable to be *scaled*, or was payable in specie. Upon this point witnesses were examined; and his Honor charged the jury, that if they were to be believed, the expression, " in good bankable currency," meant currency equivalent to gold and silver. Verdict and judgment accordingly; the defendant appealed.

*Gilmer*, for the appellant.
*Mendenhall* and *T. J. Wilson, contra.*

SETTLE, J. The bond upon which this suit is brought, was executed during the war, and if nothing had been said

as to the currency in which it was solvable, the presumption would have been, under our recent legislation, that it was solvable in Confederate money. Is this presumption rebutted, when the parties in endeavoring to fix a currency in which it may be discharged, use terms so indefinite as to be unintelligible? We think not.

The words "good, bankable currency" must be interpreted according to the state of the facts and the popular understanding of these terms at the time the note was given: *Laws* v. *Rycroft, ante* 100.

From this standpoint we have endeavored to reconcile these terms, but have been unable to do so. Bankable currency may have meant either bank notes, or Confederate Treasury notes, for the banks were dealing in both in 1863 and 1864. But when they prefix the word "good" to the "bankable currency" of that period, we are as unfortunate as the witnesses who were examined to explain these terms, and confess our inability to understand them. Indeed there was no such thing at that time as "good bankable currency." They could not have used the word "good" in the sense of par, for none of the currency then used was at par. It may be that they employed the word "good" as distinguished from counterfeit; this, however, is all conjecture. But viewing the transaction in the light of that day, we can safely say that they did not intend by these terms to make the bond payable in gold and silver. The result will be, if we discard these words as unintelligible, that the bond will stand like all others of that date, and the presumption will be that it is solvable in Confederate currency; but as it was given for a horse, that fact may be shown, and the value of the horse will be the value of the contract.

There is error. Let this be certified, &c.

PER CURIAM.                                                   Reversed.